**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

ALEKSANDER LUKAJ,

    Plaintiff,

vs.                                           Case No. 3:10-cv-799-J-37JBT

JANET NAPOLITANO, Secretary, Department
of Homeland Security; ALEJANDRO
MYORKAS, Director, Citizenship and
Immigration Services; KATHY REDMAN,
District Director, Citizenship and Immigration
Services, Tampa, FL; KATHERINE
BARANOWSKI, Field Office Director,
Citizenship and Immigration Services,
Jacksonville, FL; and ERIC H. HOLDER, JR.,
Attorney General, Department of Justice,

    Defendants.

---

**ORDER**

This cause is before the Court on Defendants' Motion to Remand in Part and Dismiss in Part (Doc. No. 27) and Plaintiff's Response (Doc. No. 30).

**BACKGROUND**

Plaintiff Aleksander Lukaj, a citizen of Albania, would like to become a citizen of the United States. He filed his application for naturalization with the USCIS[1] on September 8,

---

[1] In this Order, the Court will refer to Defendants collectively as the U.S. Citizenship and Immigration Services ("USCIS"). USCIS, which is a component of the U.S. Department of Homeland Security, is the government agency charged with administration and adjudication of certain immigration-related petitions, including the application for naturalization at issue in this case.

1

2005.  (Doc. No. 13, ¶ 13.)  He then was obliged to wait for USCIS to act on his application. He has been waiting for a very long time.

### Plaintiff's Naturalization Application

Upon filing his application, USCIS indicated that Plaintiff should expect to be notified of the date and place of his naturalization interview "within 365 days."  (*Id.* ¶ 15.)  A year passed, but Plaintiff received no such notice from USCIS.  (*Id.* ¶¶ 17-19.)  He continued to wait for USCIS to schedule an interview, and inquired repeatedly as to the status of his application.  (*Id.* ¶¶ 18-22.)  USCIS informed Plaintiff that it would not schedule an interview because its background investigation was not complete.  (*Id.*)  After waiting five years for USCIS to complete its investigation, Plaintiff filed this lawsuit.

### The Naturalization Process

Naturalization is a privilege; it is not a right.  *See* 7 Charles Gordon *et al.*, Immigration Law and Procedure § 94.01[3].  From its earliest days, the United States has prescribed by law a process by which resident aliens may apply for and obtain citizenship.  *See id.* § 95.01 (Rev. Ed. 2011).  Congress has broad power over naturalization, and it has acted pursuant to that power extensively and frequently.  *See, e.g.*, *Mathews v. Diaz*, 426 U.S. 67, 79-80 (1976).  The role our nation's courts currently play in the naturalization process is far less expansive.

At one time, Congress gave "naturalization courts" the task of adjudicating aliens' petitions for naturalization.  *See* 7 Charles Gordon *et al.*, Immigration Law and Procedure §§ 94.02[1], 96.02[3].  A predecessor of USCIS, the Immigration and Naturalization Service ("INS") was tasked with assisting the naturalization courts.  *See id.* § 96.02[3].  INS

conducted investigations of petitioners; it assembled relevant records; and it made a tentative assessment of a petitioner's qualifications for citizenship. *See id.* An alien was entitled to submit, as a matter of right, his or her petition to the naturalization court and obtain a ruling from the court on his or her eligibility for citizenship. *See id.* Once a petition was filed, an INS examiner conducted a preliminary examination, during which the examiner took evidence and assembled a complete record. *See id.* At the conclusion of the preliminary examination, the examiner made a recommendation to the Court to grant or deny the petition. *See id.*

Where recommendation of the INS examiner was positive, the naturalization court typically approved the petition and administered an oath of allegiance to the petitioner in a public hearing. *See id.* The naturalization court could conduct a more searching inquiry if the examiner recommended a petition be denied. *See id.* In sum, INS played a significant role in the naturalization process, but the final adjudication of naturalization petitions was a judicial task.

This state of affairs changed with the Immigration Act of 1990. The Act "brought a dramatic shift of power over naturalization from the judiciary to the INS." *See id.* § 94.02[1]. In passing the Act, Congress vested the exclusive authority to adjudicate naturalization applications in an administrative agency. *See* 8 U.S.C. § 1421(a) ("The sole authority to naturalize persons as citizens of the United States is conferred upon the Attorney General."). The agency no longer provided a recommendation; it made the decision. *See* 7 Charles Gordon *et al.*, Immigration Law and Procedure § 94.01[2][f].

3

Under the current administrative naturalization process, once an alien files a complete application for naturalization, USCIS undertakes an investigation concerning the applicant's eligibility for citizenship. *See id.* § 96.04. This investigation involves, among other things, (1) a "name check" conducted by the Federal Bureau of Investigation ("FBI"), (2) a check of the applicant's fingerprints by the FBI, and (3) an Interagency Border Inspection System check. *Id.*; *see also* 8 C.F.R. § 335.1. Once the investigation is complete, USCIS conducts an examination of each applicant under oath, which is also referred to as an interview. 8 C.F.R. § 335.2; *see also* 7 Charles Gordon *et al.*, Immigration Law and Procedure § 96.04.

USCIS must adjudicate each application following the completion of its examination. 8 C.F.R. §§ 335.3, 336.1. It can do so at the time of the examination or may do so afterward provided a decision is made within 120 days of the date of the examination.[2] *Id.* § 335.3. If USCIS determines that the application is due to be granted, the applicant is notified of the decision and administered the oath of office by a court or government official. *Id.* § 335.3(a). If USCIS denies an application, it is required to serve upon the applicant written notice of the denial containing the factual and legal basis for the denial. *Id.* § 336.1. When an application is denied, the applicant may request an administrative review. *Id.* § 336.2. Any such review is assigned to a different USCIS employee, who will review the record of the examination and who may, if necessary, receive new evidence. *Id.* § 336.2. If the application remains denied following this review, the applicant may seek judicial review of USCIS's final determination. *Id.* § 310.5(b); *see also* 8 U.S.C. § 1421(c).

---

[2] This 120-day time period may be extended under certain circumstances if USCIS continues the examination. *See* 8 C.F.R. § 335.3(b).

4

Besides the review of a denied naturalization application, the Court is authorized to entertain a claim involving a naturalization application in one other instance.

> An applicant for naturalization may seek judicial review of a pending application for naturalization in those instances where the Service fails to make a determination under section 335 of the Act within 120 days after an examination is conducted under part 335 of this chapter. An applicant shall make a proper application for relief to the United States District Court having jurisdiction over the district in which the applicant resides. The court may either determine the issues brought before it on their merits, or remand the matter to the Service with appropriate instructions.

8 C.F.R. § 310.5(a); *see also* 8 U.S.C. § 1447(b). In other words, if USCIS does not act within 120 days of the examination, the applicant may ask a court to intercede.

Thus, the authority of the courts to entertain actions on naturalization applications was narrowed significantly by the Immigration Act of 1990. The shift from a judicial naturalization process to an administrative one was accompanied by limits on the involvement of the courts in the naturalization process. *Cf. Levy v. INS*, 6 F. App'x 331, 333 (7th Cir. 2001). This lawsuit rubs up against these limits.

## DISCUSSION

Plaintiff's Amended Complaint seeks (1) to compel USCIS to conduct a naturalization interview and (2) an adjudication of his naturalization application. (*Id.* ¶ 12.) Before the Court can delve into the merits of Plaintiff's claims, it must inquire into whether it has jurisdiction over them. *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999). If the Court finds it is without jurisdiction, it is obliged to dismiss the case. *Id.* The Court will discuss the basis for subject matter jurisdiction for each claim in turn.

### Compelling an Agency to Act

Pursuant to the Administrative Procedure Act ("APA"), a person adversely affected by an agency action is entitled to judicial review. 5 U.S.C. § 702. Agency action includes the failure to act. *Id.* § 551(13). Because the APA requires agencies to conclude matters presented to them "within a reasonable time," *id.* § 555(b), a court may sometimes "compel agency action unlawfully withheld or unreasonably delayed," *id.* § 706(1). However, "a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004) (emphasis in original). Thus, a plaintiff may invoke subject matter jurisdiction under the APA only if the defendant had a duty to perform a ministerial or nondiscretionary act. *See id.* As explained by the D.C. Circuit, "when an agency is compelled by law to act, but the manner of its action is left to the agency's discretion, the 'court can compel the agency to act, [although it] has no power to specify what th[at] action must be.'" *Kaufman v. Mukasey*, 524 F.3d 1334, 1338 (D.C. Cir. 2008) (quoting *Norton*, 542 U.S. at 65) (alterations in original). While the APA does not confer subject matter jurisdiction by itself, the APA in conjunction with 28 U.S.C. § 1331 (which gives federal district courts federal question jurisdiction) gives the Court jurisdiction to compel unreasonably delayed agency action. *See Califano v. Sanders*, 430 U.S. 99, 106-07 (1977).

Some district courts have applied this general framework and required USCIS to adjudicate naturalization applications in a reasonable amount of time. *See, e.g.*, *Abdi v. Chertoff*, No. 6:08-cv-292-Orl-19DAB, 2008 WL 4371351 (M.D. Fla. Sep. 22, 2008); *Hamandi v. Chertoff*, 550 F. Supp. 2d 46, 50-51 (D.D.C. 2008); *Sidhu v. Chertoff*, No.

1:07-CV-1188, 2008 WL 540685 (E.D. Cal. Feb. 25, 2008). Other courts have found that USCIS has no duty to adjudicate a naturalization application within a particular time frame. *See, e.g.*, *Wang v. Gonzales*, No. 07-02272-JWL-DJW, 2008 WL 45492 (D. Kan. Jan. 2, 2008); *Omar v. Mueller*, 501 F. Supp. 2d 636 (D.N.J. 2007); *Ibrahim v. Chertoff*, 529 F. Supp. 2d 611 (E.D.N.C. 2007); *Sinha v. Upchurch*, No. 1:07 CV 2274, 2007 WL 4322225 (N.D. Ohio Dec. 7, 2007); *Dairi v. Chertoff*, No. 07cv1014, 2007 WL 3232503 (S.D. Cal. Nov. 1, 2007). These latter courts have concluded that the manner in which a background investigation is conducted is the type of discretionary function not properly the subject of a mandamus action. *See, e.g.*, *Dairi*, 2007 WL 3232503, at *2.

The Court need not wade into this debate, however. Subsequent to the filing of this action, USCIS conducted its interview of the applicant. (Doc. No. 27-1, pp. 4-5.) Thus, to the extent Plaintiff is seeking to compel USCIS to conduct an interview, his request is moot and is due to be dismissed as such.[3]

## Adjudication of Plaintiff's Naturalization Application

Plaintiff also asks that this Court "adjudicate [his] petition following" his naturalization interview. (Doc. No. 13, ¶ 12.) While the Court may be inclined to grab hold of the reins from USCIS, it cannot.

---

[3] "The rule that federal courts may not decide cases that have become moot derives from Article III's case and controversy requirement." *Sierra Club v. EPA*, 315 F.3d 1295, 1299 (11th Cir. 2002); *see also* U.S. Const. art. III, § 2. " '[A]n action that is moot cannot be characterized as an active case or controversy.' " *Al Najjar v. Ashcroft*, 273 F.3d 1330, 1335 (11th Cir. 2001) (citation omitted). "Dismissal of a moot case is required because mootness is jurisdictional." *Sierra Club*, 315 F.3d at 1299. A case can become moot either "due to a change in [factual] circumstances, or . . . [due to] a change in the law." *Coral Springs St. Sys., Inc. v. City of Sunrise*, 371 F.3d 1320, 1328 (11th Cir. 2004).

The jurisdiction of the Court is limited. *Univ. of S. Ala.*, 168 F.3d at 409. It is "empowered to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution," and which have been entrusted to it by a jurisdictional grant authorized by Congress. *See id.* (quoting *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994)). Congress may "'give, withhold or restrict such jurisdiction at its discretion, provided it be not extended beyond the boundaries fixed by the Constitution.'" *Marathon Oil Co. v. Ruhrgas*, 145 F.3d 211, 215 (5th Cir. 1998) (en banc) (quoting *Kline v. Burke Constr. Co.*, 260 U.S. 226, 234 (1922)). Further, "because the Constitution unambiguously confers this jurisdictional power to the sound discretion of Congress," this Court should proceed with caution in construing constitutional and statutory provisions dealing with its jurisdiction. *Univ. of S. Ala.*, 168 F.3d at 409.

The Immigration Act of 1990 and the regulations promulgated pursuant to the Act have stripped from the Court nearly all authority to adjudicate naturalization applications. *See* 8 U.S.C. § 1421(a); 8 C.F.R. § 310.4(a) ("No court shall have jurisdiction under section 310(a) of the Act, to naturalize a person unless a petition for naturalization with respect to that person was filed with the naturalization court before October 1, 1991."); *see also Levy*, 6 F. App'x at 333. That authority has been vested in an administrative agency. This Court may participate in the adjudicative process only to the extent authorized by Congress.

Congress has prescribed a very definite limit on the Court's jurisdiction to entertain naturalization applications. Under the Act and its subsequent amendments, this Court can participate in the processing of naturalization applications in only three ways. It can: (1) administer the oath of allegiance, 8 U.S.C. § 1421(b); (2) review the agency's denial of a

8

naturalization application once an administrative appeal is complete, *id.* § 1421(c); and (3) entertain a naturalization petition if and only if USCIS fails to act on an application in a timely manner, *id.* § 1447(b).

Title 8 U.S.C. § 1447(b) permits an applicant to petition a district court for relief if and only if USCIS fails to adjudicate the naturalization application within 120 days of the examination. The statute is a jurisdictional grant and a transfer of authority to adjudicate the petitioner's naturalization application from the agency to the Court. *See Bustamante v. Napolitano*, 582 F.3d 403, 405 (2d Cir. 2009) (holding "only the district court has jurisdiction over a naturalization application once an applicant files a proper Section 1447(b) petition"); *Etape v. Chertoff*, 497 F.3d 379, 383 (4th Cir. 2007) (holding the filing of "a proper § 1447(b) petition vests the district court with exclusive jurisdiction"); *United States v. Hovsepian*, 359 F.3d 1144, 1164 (9th Cir. 2004) ("Section 1447(b) allows the district court to obtain exclusive jurisdiction over those naturalization applications on which the INS fails to act within 120 days if the applicant properly invokes the court's authority."). If a proper Section 1447(b) petition is filed, the Court is provided *exclusive* authority to decide petitioner's application. *See, e.g.*, *Bustamante*, 582 F.3d at 405. USCIS loses its authority to adjudicate the naturalization application unless and until the matter is remanded to it by the court. *See, e.g., Omar v. Holder*, 756 F. Supp. 2d 887, 891-92 (S.D. Ohio 2010).

In view of this very deliberate shifting of exclusivity by Congress, the Court concludes that the 120-day time period in Section 1447 imposes a condition upon this Court's jurisdiction. Statute-based time limits on the jurisdiction of federal courts are well-known. *See, e.g.*, *Bowles v. Russell*, 551 U.S. 205, 211-13 (2007) (concluding the notice-of-appeal

9

period in 28 U.S.C. § 2107(c) is a jurisdictional limit); *Fed. Election Comm'n v. NRA Political Victory Fund*, 513 U.S. 88, 99 (1994) (holding the 90-day limit in 28 U.S.C. § 2101(c) is mandatory and exclusive). The Supreme Court has emphasized that the text, context, and historical treatment of a statutory provision are important when deciding "whether a statute ranks a requirement as jurisdictional." *Reed Elsevier, Inc. v. Muchnick*, 130 S. Ct. 1237, 1247 (2010) (discussing *Bowles v. Russell*, 551 U.S. 205 (2007)). The text of Section 1447(b) makes clear that a petitioner may seek relief in court only after USCIS has had at least 120 days to consider a naturalization application after the examination. This, taken together with the provisions of Section 1421, persuade the Court that the 120-day time period is a jurisdictional prescription. This is reinforced by the history of naturalization, the dramatic shift of naturalization authority to an administrative agency by the Immigration Act of 1990, and the decision of Congress to prescribe the exclusive authority to adjudicate to the agency or the Court based upon the stage of the adjudicative process. All of this points to the conclusion that Congress intended to tightly control the authority of the courts to entertain claims involving naturalization applications, which is more consistent with a jurisdictional requirement than a claims-processing rule.

Accordingly, the Court concludes that it lacks jurisdiction over Plaintiff's Section 1447 claim. The time period in which USCIS had to act had not begun as of the filing of this case. As such, the Court must dismiss this case.[4]

---

[4] The Court recognizes the dismissal of Plaintiff's claims may seem inefficient. It is required, however. *See Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999). The temporary repose provided by dismissal will not prevent Plaintiff from bringing an action in the future on the proper jurisdictional footing. It also provides USCIS with a fresh opportunity to render a decision on Plaintiff's application. While the Court does not

It is, therefore, **ORDERED**:

1. This case is **DISMISSED** for lack of subject-matter jurisdiction.

2. All pending Motions are **DENIED AS MOOT**.

3. The Clerk is directed to close this file.

**DONE AND ORDERED** in Chambers, in Jacksonville, Florida, on October 19, 2011.

ROY B. DALTON JR.
United States District Judge

---

believe USCIS will allow Plaintiff's naturalization application to remain unresolved, if Plaintiff finds it necessary to file a subsequent petition, he shall comply with Local Rule 1.04(d), which imposes a continuing duty on all counsel of record to promptly inform the Court of all related proceedings by filing and serving a "Notice of Pendency of Related Actions." Plaintiff should identify this case and every administrative proceeding related to his naturalization petition in his Notice.

Copies to:

counsel of record